JAMES WADE, Appellant, v. WILLIAM A. WHEELER, and others, Respondents.

3   201
68h  601
3L  201
25ap594

(GENERAL TERM, THIRD DEPARTMENT, SEPTEMBER, 1870.)

The defendants, who were common carriers, were also accustomed to receive and store, in their warehouse, goods received by them for transportation as ordered by the consignees, and they so received the plaintiff's wheat; the plaintiff sold the wheat and gave an order for its transportation by the defendants to his vendee, which they received and accepted, and the charge for storage, according to their custom in like cases, ceased; they afterward forwarded goods in their charge in the order in which they had received directions therefor, as fast as the means at their command permitted. On the day after receipt of the plaintiff's order, the defendants' warehouse was burned, and the wheat was destroyed, and the plaintiff sued as assignee of his vendee to recover therefor.—*Held*, that the defendants assumed the relation of carriers from the time of their acceptance of the plaintiff's order for transportation, and that they were accordingly liable as such for the value of the wheat.

THIS is an appeal from a judgment entered upon the report of a referee. The facts and questions raised upon them appear in the opinion of the court.

*Foote & James*, for the appellant.

*Brown & Hasbrouck*, for the respondent.

Present—MILLER, P. J., POTTER and PARKER, JJ.

By the Court—PARKER, J. Two principal questions are presented in this case:

1st. Were the defendants, while operating the railroad, common carriers, and liable as such; and,

2d. If they were so liable, did they hold the wheat in question at the time when it was burned, as common carriers, or only as warehousemen?

The first question we have examined in another case against these defendants already decided at this term (*Rogers et al.* v. *Wheeleer et al.*), arising out of loss of wheat by the

same fire, in which the defendants set up, by answer, the same facts on which they rely in this case to relieve them from the relation and liability of common carriers, and to which answer the plaintiffs demurred. In that case we have come to the conclusion that the facts alleged were not sufficient to constitute a defence, but that defendants were, notwithstanding such facts, common carriers, and liable as such.

The decision in that case is decisive of the first question above stated in this.

The learned referee to whom this case was referred, and who heard and decided the issues therein, held, upon the second question, that the wheat destroyed, for which the action is brought, was held by the defendants as warehousemen, and not as common carriers. This decision relieved them from liability in this case, even if they were common carriers, and it became unnecessary therefore for the referee to decide the question whether they were or not.

The question thus decided by the referee in favor of the defendants is the one which now presents itself for our decision. The facts on which the question depends are as follows: The defendants, as trustees of the second mortgage bondholders of the Northern Railroad Company, were engaged in the business both of operating the railroad and of storing grain. They had a warehouse at Ogdensburgh where they stored grain to await the orders of the owners. When an order for the shipment of grain was given, if accepted, defendants entered it upon their books, at the warehouse, and forwarded the grain upon the railroad to the person to whom it was ordered without any further act on the part of the consignor. When an order was put in for grain to be sent forward, the charge for storage ceased.

On the 8th day of July, 1864, a cargo of 5,000 bushels of wheat was received by defendants for the plaintiff, at their warehouse, to be held subject to his order. On the 26th day of July, 1864, plaintiff sold 1,400 bushels of the grain to D. C. Brookins, of Potsdam. On the 27th of July, 1864, plaintiff delivered an order to defendants

Wade v. Wheeler.

at the warehouse to forward said grain to D. C. Brookins, at Potsdam, and defendants accepted said order and entered the same on their books at said warehouse. After such order was delivered, and before the loss herein after mentioned, no grain was shipped or sent from Ogdensburgh on said railroad except such as had been ordered forward previous to the 27th, and the defendants were sending forward grain as fast as the means at their command would permit. On the afternoon of the 28th of July, 1864, said warehouse, with all its contents, including said 1,400 bushels of wheat, was destroyed by an accidental fire. Previous to the commencement of this action the said Brookins assigned to the plaintiff his right of action for said loss.

The referee held that the sale by Wade to Brookins, and the delivery and acceptance of the order at the warehouse, passed the title of the 1,000 bushels of wheat from Wade to Brookins; and that Wade, as assignee of Brookins, became possessed of all the legal rights held by Brookins, to recover the value of the 1,400 bushels of wheat. But he also held, that the relation of consignee and carrier never attached as between Brookins and defendants in this case as to said wheat.

That at the time of said sale and transfer from Wade to Brookins, said wheat was in the possession of defendants as warehousemen; that said sale did not, of itself, change that relation, nor did the direction to forward said wheat by railroad, and the entry of such direction in the books of the warehouse, *Eo instanti*, change the defendants from warehouse men to carriers, with the liabilities of that relation in respect to said wheat; that such change under the circumstances would not legally take place until the defendants, by some act, entered upon the discharge of their business as carriers, in respect to said property, the same as if the wheat had been in the warehouse of a third party.

That at the time of this loss, the defendants were still warehousemen as to this wheat, and in the absence of all claim or proof of negligence, were not liable for its loss.

The defendants received the wheat as warehouse men, and continued to hold it, as such, until they assumed the new relation of carriers. The question is, when did such new relation begin? The answer must be, I think, at the time when they accepted the order to transport the wheat to Potsdam. From that time they ceased to charge for storage, and held it on storage no longer. Their holding it at the warehouse now, was not for the benefit of the owner, but for their own convenience, and as accessory to its transportation. The circumstance, that defendants had not, as both parties knew and understood, cars ready for its immediate shipment, and that it was to take its time, after other grain, which had been ordered forward before it, does not at all change the result; for still it was held merely for carriage, to be forwarded without further orders, at the earliest practicable moment. In *Coyl* v. *Western Railroad Corporation* (47 Barb., 152, 153, and 154), the court say: "There can be no doubt that the barrels were placed by the defendant's employes in the freight house, for the convenience of the company, with a view, and for the purpose of facilitating their transportation to the place of destination, for which they were designed, and to which they were directed. These were not placed there to remain for any period of time, but to be forwarded at the earliest practicable period. Under such circumstances it is manifest, that the defendant received the property for the purpose of transportation, and not as a warehouseman, and that the company is liable, as a common carrier." So in *Blossom* v. *Griffin* (3 Kern., 569, 572), the court say: "The defendants were both carriers and warehousemen. In such a case it is well settled, that if the deposit of the goods in the warehouse is a mere accessory to the carriage, in other words, if they are deposited for the purpose of being carried without further orders, the responsibility of the carrier begins from the time they are received." In the case at bar, it is true, the grain was not deposited in the warehouse, for the purpose of being carried without further orders, but it was already there when the defendants

undertook to carry it to Potsdam without further orders. And where goods are delivered to a carrier to be kept in his warehouse until further orders, the liability of the carrier will not attach until the goods are ordered to be carried, but when this order is given, the responsibility of the carrier attaches at once. (2 Redfield on Railways, section 247.)

The defendants, on accepting the order to carry the wheat to Potsdam, assumed the same relation as though they then received it for that purpose; manifestly, it can make no difference, that the defendants already had possession when they undertook to transport the wheat. Did they from the acceptance of the order, hold it only for the purpose of transporting it without further direction? This is the test, as shown by all the authorities; and see 1 Smith's Leading Cases, 393, and cases cited. Under this test, I see no reason to doubt that the defendants were, at the time of the loss, holding the wheat as common carriers, and no longer as warehousemen, and were, therefore, liable.

The judgment must be reversed and a new trial granted, costs to abide the event.

