LONDON AND LANCASHIRE FIRE INSURANCE COMPANY, Respondent, *v.* THE ROME, WATERTOWN AND OGDENSBURGH RAILROAD COMPANY, Appellant.

*Subrogation of insurance companies to the rights of the owner of insured property — liability of railroad companies as common carriers and as warehousemen distinguished — goods destroyed by fire, in a freight house, while awaiting transportation — duty of loading freight — absence of special contract limiting a carrier's common-law liability.*

When goods in the hands of a common carrier, insured by the owner, are lost or injured under circumstances rendering the carrier liable to the owner, the insurer, who pays the loss to the owner, is entitled to be subrogated to the rights and remedies of the owner against the carrier.

A railroad company's liability as an insurer, in the capacity of a common carrier, commences as soon as goods have been delivered to and accepted by it solely for transportation, although the goods may not be put immediately in transit, but are at first, for the railroad company's own convenience, deposited in its warehouse.

If, however, a railroad company receives goods in its warehouse to be forwarded, but not until it shall have received orders from the owner, or the happening of a certain even·, or until something further is done to the goods to prepare them for transportation, the delivery to the railroad company is not as a common carrier, but only as a warehouseman, and it is only answerable in the latter capacity if the goods are destroyed by fire while in the warehouse, and before such orders have been received or such event has happened.

In an action brought by an insurance company, as the assignee of the owner of a quantity of hay and straw insured by it, which had been destroyed by fire in a railroad freight house, and on which it had paid the insurance, against the railroad company to recover for the loss, evidence that the sole purpose of the delivery of the goods to the defendant was for as early transportation over its road as could be made in the course of its business; that there was such a delivery and relinquishment of control over the property to the defendant as authorized it to transport the goods without further directions from the owner, and that the goods were detained in the freight house for the defendant's own convenience, to enable it to procure cars for their transportation, and not through any act or omission of the owner, warrants the submission to the jury of the question whether the defendant held the goods, at the time of the loss, as a common carrier.

*Semble,* that the duty of loading freight, delivered to and accepted by a railroad company for transportation over its road, rests primarily upon the company.

An established rule of the defendant railroad company required all shippers of hay, straw, or other heavy freight, to unload it from the vehicles upon which it was delivered into the freight house at the station in question, when delivered there, and afterwards to load it upon cars furnished by the company; the goods in suit consisted of hay and straw.

*Held,* that if this rule was of any binding force, it at most only required shippers of the kinds of freight covered by it to furnish the necessary help to load the freight, and that it did not change the company's relation to property delivered to and accepted by it for the sole purpose of being carried over its road.

In the absence of evidence to the contrary, it is to be assumed that property accepted by a carrier for transportation is taken under the responsibility cast upon it by the common law, except as modified by statute; and if lost under circumstances which render the carrier liable by the general rule of law, it must respond, unless it can show that there was a special acceptance equivalent to a contract which exempts it from the ordinary liability of common carriers.

A carrier, who fails to give a receipt, or to make any other contract for the shipment of property, will not be absolved from liability for its destruction by evidence that the owner or his agent previously knew of conditions in the shipping bills or receipts usually given, which would discharge the carrier from liability for the loss sustained.

APPEAL by the defendant, the Rome, Watertown and Ogdensburgh Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of Jefferson county on the 9th day of April, 1888, upon the verdict of a jury rendered at the Jefferson Circuit, and from an order denying the defendant's motion for a new trial made on the minutes of the trial judge.

*D. G. Griffin,* for the appellant.

*A. H. Sawyer,* for the respondent.

MARTIN, J. :

This action was to recover for the loss of a large quantity of hay and straw destroyed by fire, which occurred April 3, 1885, at the defendant's freight house at Cape Vincent, N. Y. Prior to that time, William J. Grant and Orlando W. Loomis had caused to be delivered at the defendant's freight house and a shed adjoining it the hay and straw in question, awaiting shipment over the defendant's road.

The owners had procured policies of insurance thereon with plaintiff and other insurance companies, which, after the fire, paid the amount of the insurance to Grant and Loomis, and took from them an assignment to the plaintiff of all their interest in any claim which they had against the defendant, occasioned by the destruction of the property. The present action is based upon the claims thus assigned to the plaintiff.

The grounds upon which the plaintiff claimed the right to recover

the value of the property thus destroyed were twofold : (1) That the property was in the possession of the defendant as a common carrier at the time of its destruction ; (2) that its loss was occasioned by the defendant's negligence. The defendant denied that the property was in its possession as a common carrier, and also denied that such loss was occasioned by its negligence.

On the trial, the court submitted to the jury not only the general question of the defendant's liability, but also whether the fire was caused by the defendant's negligence, and whether the hay in question was held by it at the time of the fire as a common carrier, or as a warehouseman. The jury found a general verdict in favor of the plaintiff for $10,521.17, and in answer to the question submitted, it found that the fire was not caused by the defendant's negligence, but that it held the hay as a common carrier at the time. Thus the verdict discloses that the defendant was held liable upon the sole ground that it was a common carrier, and hence an insurer of the property in its possession.

It seems to be settled that when goods in the hands of a common carrier are insured by the owner and lost or injured, under circumstances rendering the carrier liable to the owner, the insurer who pays the loss to the owners is entitled to be subrogated to the rights and remedies of the owner against the carrier. (*Fayerweather* v. *Phenix Ins. Co.*, 118 N. Y. 324, 327 ; *Hall* v. *Railroad Co.*, 13 Wall. 367 ; *Connecticut F. Ins. Co.* v. *Erie Railway Co.*, 73 N. Y. 399 ; *Platt* v. *Richmond, Y. R. & C. R. R. Co.*, 108 id. 363 ; *Phœnix Ins. Co.* v. *Erie Transportation Co.*, 117 U. S. 312.) Nor does the fact that the plaintiff's assignors were to receive a portion of the sum collected of the defendant in any way interfere with the plaintiff's right of recovery. (*Durgin* v. *Ireland*, 14 N. Y. 322 ; *Gardner* v. *Barden*, 34 id. 433, 436.) Indeed, the right of the plaintiff to maintain this action does not seem to be denied by the defendant. Hence, it must be assumed that the action was properly brought by the plaintiff. Therefore, the first and most important question to be determined upon this appeal is, whether the evidence was sufficient to justify the finding that the hay destroyed was in the defendant's possession as a common carrier.

That a common carrier is responsible for the loss of goods in his possession as such, irrespective of any question of negligence or fault

on his part, if the loss does not occur by the act of God or the public enemies, and that with these exceptions he is an insurer against all losses, is a principle of the law of bailments so well established as to render the citation of authorities unnecessary. Hence, the question with which we have to deal is not as to the extent and character of the liability of a common carrier, but whether the goods destroyed were in the defendant's possession as such.

The defendant was both a common carrier and warehouseman. If the delivery of this hay and straw was made to the defendant for as early transportation as could be made in the course of its business, subject only to such delays as might necessarily occur from awaiting the departure of trains, the lack of sufficient cars, the performance of prior engagements, or other causes existing in the business of the defendant, it became, the moment the delivery was made, a common carrier as to it, and its responsibility as such at once attached. The general rule is that the liability of a common carrier commences as soon as the goods have been delivered to and accepted by him solely for transportation, although they may not be put immediately in transit, but are at first for his own convenience temporarily deposited in his warehouse. In such cases the deposit is a mere accessory to the carriage, and does not postpone his liability as common carrier to the time when the goods shall actually be put in motion towards their place of destination. Still, if he receives the goods in his warehouse to be forwarded, but not until he shall have received orders from the owners, or the happening of a certain event, or until something further is done to the goods to prepare them for transportation, the delivery to him is not as a common carrier but only as a warehouseman, and he is only answerable in the latter capacity if the goods are destroyed while in the warehouse by fire and before such orders have been received, or such event has happened. Hutchinson on Carriers, § 89; *Blossom* v. *Griffin*, 13 N. Y. 569, 572; *Wade* v. *Wheeler*, 3 Lans. 201, 204; S. C., 47 N. Y. 658; *Ladue* v. *Griffith*, 25 id. 364, 367; *Read* v. *Spaulding*, 30 id. 630; *Coyle* v. *Western Railroad Corporation*, 47 Barb. 152; Angell on Carriers, § 134; *O'Neill* v. *N. Y. C. & H. R. R. R. Co.*, 60 N. Y. 138; *Rogers* v. *Wheeler*, 52 id. 262.

If, therefore, the evidence was such as to justify the jury in find-

ing that the property in question was deposited in the defendant's warehouse, and left with it for the purpose of being transported over its road without further orders from the plaintiff's assignors, the jury was justified in finding that the goods were in the possession of the defendant as a common carrier and not as warehouseman.

On the other hand, if the evidence showed conclusively that the property was to remain in the possession of the defendant until it should receive orders from the then owners to ship the same, the finding of the jury that the property was in the defendant's possession as a common carrier cannot be upheld.

This leads to an examination of the facts bearing upon the character and extent of the delivery to the defendant by the plaintiff's assignors. During the autumn and winter of 1884–5, they were engaged in buying hay and straw from farmers, baling and shipping it over defendant's road to an eastern market for sale. Their purchases during that season amounted to more than 1,800 tons, of which all except that destroyed by fire had been carried over the defendant's road. All this hay and straw had been delivered at the defendant's freight house for transportation by it, including the portion thus destroyed.

An established rule of the defendant required all shippers of hay, straw, lumber or other heavy freight to unload it from the wagons or sleighs upon which it was delivered into the freight house at the station, when delivered there, and afterwards to load it upon cars furnished by the defendant.

During that season one Reff was employed by the plaintiff's assignors to receive the hay purchased by them as it was delivered by the farmers at the defendant's station at Cape Vincent, to take the weight, and when cars were there for that purpose to load it directly from the wagons or sleighs upon which it was delivered, into the cars, and when cars were not furnished to deposit it in the freight house where the defendant's agent directed, until cars were furnished by the defendant, and then to load it therein.

The defendant failed to furnish sufficient cars for the transportation of the hay. Application was frequently made to the defendant's agent at Cape Vincent, and to its superintendent of transportation, for additional cars, so that the hay might be promptly shipped. Yet, notwithstanding the efforts of the plaintiff's assignors to obtain

necessary cars for that purpose, they were not furnished in suffi-
cient numbers to enable them to ship the hay as fast as it was
delivered, and it accumulated until the inclosed portion of the
defendant's freight house in which it had been placed for shipment,
became filled, when Mr. Reff, acting for the plaintiff's assignors,
notified the farmers who were delivering the hay, not to deliver any
more, as there was no more room for it. Thereupon the defendant's
agent, in whose presence this direction was given, countermanded it
and directed the farmers to continue drawing their hay, and stated that
he would find room for it. In pursuance of this order the farmers
continued to deliver their hay at that station, and under the direc-
tion of the defendant's agent, it was placed in an open shed which
adjoined or formed a part of the defendant's freight house, where it
remained until it was destroyed.

During all the time after the commencement of the delivery of this
hay until it was destroyed, the defendant had a general order from
the plaintiff's assignors to ship their hay as fast as loaded upon the
cars, to certain firms in the city of New York, unless other special
orders were given. In pursuance of this order, the defendant from
time to time during the season, shipped all that was loaded in their
absence.

Upon the hay shipped the freight was paid by the consignee. No
receipt, shipping bill or bill of lading was ever delivered by the
defendant to plaintiff's assignors, for any of the hay loaded or for-
warded in their absence under such general orders. None of the
bales of hay were marked with the name of the consignee. No
single bales were shipped, but all the hay was shipped by carloads,
and the defendant marked the cars with the name of the consignee.
While defendant's agent testified that he had forwarded hay in the
absence of the plaintiff's assignors, and signed shipping bills in
their names for his bookkeeper to make entries from, yet there was
no proof that that fact ever came to their knowledge, or that they
knew the contents of the shipping bills or receipts, or the conditions
printed thereon.

The witness Reff, who was employed by the plaintiff's assignors to
load this hay, testified that he had loaded as many as nine cars in a day,
and could have loaded as many any day if they had been furnished,
but that the defendant did not furnish more than four or five cars

in any one day. He also testified that he was directed by them to load cars as fast as they could be obtained; that he did so during the entire season, and that there was never an occasion when cars were not loaded as soon as they were switched down to the freight house for that purpose. Upon evidence sufficient to establish the foregoing facts, the question whether the defendant held the hay in controversy as a common carrier, was submitted to the jury.

The facts, we think, render it quite manifest that the sole purpose of the delivery of the hay to the defendant was for as early transportation over its railroad as could be made in the course of its business, and that there was such a delivery and relinquishment of all control over the property to the defendant as authorized it to transport the property without any further direction from plaintiff's assignors. It is equally manifest that this hay was detained at the defendant's freight house for its own convenience, to enable it to procure cars for its transportation, and that the delay in forwarding it was not occasioned by any omission of the plaintiff's assignors to direct where it should be shipped, or to load it upon the cars as fast as they were furnished for that purpose, nor was it detained in furtherance of any desire or direction, or for the convenience of the plaintiff's assignors. Nothing further was required to prepare it for transportation. No further orders were necessary to enable the defendant to forward it. The only act the plaintiff's assignors were to perform was required by the rules of the defendant company, and for this they had fully provided by employing Reff, who was prepared to load the hay whenever cars were furnished by the defendant for that purpose.

We think the duty of loading freight delivered to and accepted by a railroad company for transportation over its road, rests primarily upon the company. In this case, however, the defendant had adopted a rule by which the shippers of heavy and bulky freight were required to load it upon the cars. The binding force of such a rule may, perhaps, be doubted. But be that as it may, the most that can be claimed for the rule under consideration is, that by reason of its adoption, the shippers of that particular kind of freight were required to furnish the necessary help to load it. Obviously the purpose of this rule was not to change the company's relation to the property delivered to and accepted by it for the sole purpose

of being carried over its road. If such had been its purpose, it would have plainly stated that such freight would not be received or accepted for transportation until it was loaded on the cars. We think it is quite apparent that this rule was intended at most to impose upon the shippers of such freight the burden of loading it, and thus avoid the necessity, on the part of the company, of keeping a large force of employees for that purpose. The time, place and manner of loading, and the persons performing that service were clearly under the direction and control of the defendant.

Under the facts and circumstances disclosed by the evidence in this case, we think the court was justified in submitting to the jury the question whether at the time of the fire the defendant was in possession of the property destroyed as a common carrier, and that the verdict of the jury should be upheld.

We have examined the portion of the charge of the trial court to which the appellant has called our attention in his brief, but have found no error which requires us to disturb the judgment.

. The only other ground upon which the defendant seeks to reverse the judgment is, that there was a special contract between the plaintiff's assignors and the appellant by which its liability as a common carrier was so far limited as not to include a loss by fire. It is not contended that there was any express contract of that character, either oral or written, nor that any shipping bill, receipt or shipping orders for this property were delivered to the plaintiff's assignors, or by them to the defendant, or came to their knowledge.

The ground of the appellant's contention seems to be that this court should assume, although the question is here presented for the first time, that if the hay was accepted by the defendant as a common carrier, it was accepted under a special contract to be implied from its general course of dealing, in that it usually delivered to shippers receipts which contained a provision to the effect that it would not be responsible for damages occasioned by delays from storms, accidents or unavoidable causes, or by decay or injury of perishable articles, or from injury to property produced by frosts, heat or the elements, or from leakage occasioned from any defects in packages.

We do not see how this contention can be sustained. In *Park* v. *Preston* (108 N. Y. 434), it was held that in the absence of evi-

dence to the contrary, it is to be assumed that property accepted by a carrier for transportation, is taken under the responsibility cast upon him by common law, except as modified by statute, and if lost under circumstances which render the carrier liable by the general rule of law he must respond unless he can show that there was a special acceptance equivalent to a contract which exempts him from the ordinary liability of common carriers, citing *Dorr* v. *New Jersey Steam Navigation Co.* (11 N. Y. 485) ; *Blossom* v. *Dodd* (43 id. 264) ; *Madan* v. *Sherard* (73 id. 330).

Again in *Reed* v. *Fargo* (7 N. Y. Supp. 185 ; 26 N. Y. St. Repr. 587) it was held that a carrier who fails to give a receipt, or to make any other contract for the shipment of property, will not be absolved from liability for its destruction by evidence that the plaintiff or his agent previously knew of conditions in the shipping bills or receipts usually given, which would discharge the defendant from liability for the loss sustained. (See *Pearsall* v. *W. U. T. Co.*, 124 N. Y. 256 ; *Dorr* v. *New Jersey Steam Navigation Co.*, 11 id. 485 ; *Kirkland* v. *Dinsmore*, 62 id. 171, 175 ; *Blossom* v. *Dodd*, 43 id. 264.)

We find in this case no sufficient evidence of any such special acceptance or contract as to the property in question, as would exempt the defendant from the ordinary liabilities of a common carrier. We think the cases cited are decisive of this question, and require us to hold that the defendant's liability as a common carrier was not limited by contract or otherwise, and that the verdict of the jury should be upheld.

This conclusion renders it unnecessary to determine whether if such a receipt had been delivered to the plaintiff's assignors, it would have exempted the defendant from liability for this loss.

The judgment and order must be affirmed, with costs.

HARDIN, P. J., and MERWIN, J., concurred.

Judgment and order affirmed, with costs.

---

NOTE. The rest of the cases of this term will be found in the next volume (69) Hun — [REP.