## Richmond.

VAUGHAN MACHINE COMPANY v. STANTON TANNING COMPANY.

106   445
f110   518

January 17, 1907.

1. INSTRUCTIONS—*Directing Verdict—Partial View of Evidence.*—If in an action by the seller against the purchaser for the purchase price of goods it appears that the goods were sold f. o. b. the cars of a common carrier at a designated point, and were delivered to and accepted by such carrier at that point without any limitation on his common law liability, although the evidence strongly tends to show that the goods were negligently loaded and that the injury thereto resulted therefrom, yet if there is other important evidence bearing upon the issue before the jury, it is error to instruct them that if they believe from the evidence that the goods were properly loaded and the cars were in a proper condition for transportation they must find for the plaintiffs, otherwise for the defendant. It is error to give an instruction directing a verdict for the plaintiff or defendant upon a partial view of the evidence.

2. CARRIERS—*Goods Injured in Transit—Who to Sue.*—Where goods are sold f. o. b. cars of a common carrier at a designated point, and are delivered to the carrier at such point and are accepted by him without any limitation on his common law liability and are injured in transit, the right of action therefor is in the consignee-purchaser.

Error to a judgment of the Corporation Court of the city of Manchester in a proceeding by motion for a judgment. Judgment for the defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*L. P. Pool,* for the plaintiff in error.

*Allen G. Collins,* for the defendant in error.

KEITH, P., delivered the opinion of the Court.

The Vaughan Machine Company filed its motion against Marion H. Chalkley, trading under the firm name of the Stanton Tanning Company, in the Corporation Court of the city of Manchester, asking judgment upon a negotiable note given by the defendant company to it for the sum of $617.73, with interest, dated April 23, 1903, and payable one year after date. There was a judgment for the defendant, and the case is before us upon a writ of error sued out by the Vaughan Machine Company.

The case presented upon the record is as follows:  The Stanton Tanning Company, hereinafter referred to as Chalkley & Company, purchased of the Vaughan Machine Company a second-hand splitting machine, to be used in connection with their tanning business, at the price of $700, which was shipped to them from Peabody, Mass., on August 5, 1902, f. o. b. at that place.  There seems to have been a balance on account due Chalkley & Company, which reduced their indebtedness to $617.73, as of August 5.  The bill of lading issued by the Boston and Maine railroad acknowledged the receipt of the machine in apparent good order, consigned to Chalkley & Company, Richmond, Va., and contains no stipulation limiting its liability as a common carrier.  On August 11, the Richmond, Fredericksburg and Potomac Railroad Company notified Chalkley & Company by postal card that the machine had reached Richmond and was stored at the risk of the latter company. When it arrived in Richmond, however, the machine had been so injured in the course of transportation that Chalkley & Company refused to receive it, and at once notified the Vaughan Machine Company, who, under date of Peabody, Mass., August 22, 1902, wrote Chalkley & Company as follows:  "We are in receipt of your favor of the 19th instant, and are very sorry to learn that the belt knife splitting machine was broken in transit.  Kindly report to us just what parts are broken, etc.,

and we will give same our best attention."   On September 4 the Vaughan Machine Company wrote to Chalkley & Company, and after referring to other matters go on to say:   "As to the belt knife splitting machine we would say that this has apparently been broken up by the railroad, and the fault is wholly with them.   The machine was shipped from here under proper conditions and all due caution was taken to prevent breakage, and there must have been a very serious shaking up of the car to cause this trouble, as we ship a great many of these machines and never have any complaints from breakage.   As this machine was sold f. o. b. Peabody, we feel that it rests with you to make claim against the railroad for the amount of damage done, and we shall, of course, expect to do anything we can to aid you in the matter, as we shall expect settlement for the machine from you."

On October 7, 1902, the Vaughan Machine Company sent a statement of their account, asking that it be settled up by a one year's note for the price of the splitting machine, and a thirty days' note to cover certain other items in the account.   To this Chalkley & Company replied under date of October 15, 1902: "Our attorney advised us not to send note until the matter has been adjusted with the railroad company.   As soon as the matter is adjusted with the railroad company we will send you note."

There was a good deal of correspondence about this matter during the latter part of 1902 and in the early months of 1903, in which the Vaughan Machine Company insisted upon the execution of the note in accordance with the terms of sale, for the splitting machine, and Chalkley & Company, without undertaking to rescind the contract of purchase, postponed a compliance with it until the controversy with the railroad company as to its liability could be determined, concluding, however, with the execution of the note, which is as follows:

"$617.73.                    Richmond, Va., April 23, 1903.

"One year after date we promise to pay to the order of Vaughan Machine Company six hundred and seventeen 73-100 dollars. Negotiable and payable at the Planters' National Bank, Richmond, Va. Value received. The drawer and endorser of this note hereby waive the benefit of their homestead exemption as to this debt.

"The Stanton Tanning Company,<br>"By M. H. Chalkley."

After the note was executed a misunderstanding arose as to other items in the account, the Vaughan Machine Company claiming that there was a balance in their favor of $137.50, not embraced in the note, and the contention of Chalkley & Company being that the note covered all that was due from them; but with that phase of their disagreement we are not here concerned.

As the time for the payment of the note approached the correspondence was renewed with respect to the injured machine. On the 28th of March, 1904, Chalkley & Company addressed the following letter to the Vaughan Machine Company: "We fully expected to have recovered from the railroad company the cost covering the destruction of a belt knife in time to make settlement with you for our note maturing next month. We finally found enough cars to attach (referring to an effort to hold the non-resident carriers liable), but we fear that the Supreme Court's decision will cause us to be unable to sustain our point, and later on will have to sue in your city; therefore, won't you take our claim and sue for us, we paying all cost, and give you another note paying interest at 8 *per cent.* on same in advance? This will help us considerable. As soon as we get a settlement we will then purchase of you a seventy-two-inch machine." This letter was followed by one of April 11, 1904: "Enclosed please find note at four months and check for interest, all in lieu of note due April 23. This is the best we can

do at the present time." This, however, Vaughan Machine Company refused to accept in a letter dated April 14, 1904: "We are much surprised to receive this communication from you in the face of our letter of March 30. We now beg to state most emphatically, in words which we trust you cannot misconstrue, that we will under no consideration whatever grant any extension of time on your note coming due on the 23d instant." It seems a proposition to take up a twelve-months' note by one at four months was subsequently made more than once, and was finally rejected by the Vaughan Machine Company, in a letter dated April 20, 1904: "We have yours of the 18th with note and check enclosed. We beg to repeat what we stated in our letter of the 14th—that under no consideration will we accept any renewal of your note coming due on the 23d. Note and check is herewith enclosed." (Meaning note at four months.)

When the note given by Chalkley & Company for $617.73, at one year, was presented for payment it was dishonored and protested; and thereupon suit was instituted.

The evidence introduced on the part of the defense strongly tends to show that the machine was negligently loaded upon the cars, and that the injury to it resulted from that negligence. When the evidence was all in the court gave the following instruction:

"If the jury believe from the evidence that the machine was properly loaded on the train at Peabody, Mass., and that the same was in proper condition for transportation, they must find for the plaintiff; otherwise, they must find for the defendant."

This instruction leaves out of view much important evidence, directly bearing upon the issue before the jury. The evidence shows that the machine for which the note was given reached Richmond on August 11, 1902; that defendant in error was at once notified of its arrival; that its condition, including the injuries which it had sustained and the manner in which it had been loaded, were open and obvious to inspection; that Chalk-

ley & Company at once notified the Vaughan Machine Company of the damage which the machine had sustained in transit, and were at once informed that the shipper claimed that the machine had been carefully loaded, that there was no liability upon it for negligence, and the loss was caused by the carelessness of the railroad company, and they must look to it for compensation. After much correspondence upon the subject, with all the facts of the case within their knowledge, or open to their inquiry, Chalkley & Company, acting for the Stanton Tanning Company, on the 23d of April, 1903, executed the note sued upon, and when the time of its maturity approached more than once offered to give a new note at four months in settlement of the transaction. We have seen that there was no effort to impose a limitation by contract upon the common law liability of the common carrier in this case—at least none such appears in this record.

In *London & Lancashire F. Ins. Co. v. Rome, Watertown, &c., R. Co.,* 68 Hun. 598, 23 N. Y. Supp. 231, there was an established rule of the defendant railroad company requiring all shippers of hay, straw, or other heavy freight, to unload it from the vehicles upon which it was delivered into the freight house at the station, when delivered there, and afterwards to load it upon cars furnished by the company. The court held that "if this rule was of any binding force it at most only required shippers of the kinds of freight covered by it to furnish the necessary help to load the freight, and that it did not change the company's relation to property delivered to and accepted by it for the sole purpose of being carried over its road. In the absence of evidence to the contrary it is to be assumed that property accepted by a carrier for transportation is taken under the responsibility cast upon it by the common law, except as modified by statute; and if lost under circumstances which render the carrier liable by the general rule of law it must respond, unless it can show that there was a special acceptance equivalent to a contract which exempts it from the ordinary liability of com-

mon carriers." And in the same case it is said that it seems that "the duty of loading freight, delivered to and accepted by a railroad company for transportation over its road, rests primarily upon the company."

In *Hannibal & St. Jo. R. Co.* v. *Swift,* 12 Wall. 362, 20 L. Ed. 423, Mr. Justice Field, delivering the opinion, said: "The obligations and liabilities of a common carrier are not dependent upon contract, though they may be modified and limited by contract. They are imposed by law, from the public nature of the employment. The liability of a common carrier of goods and merchandise attaches when the property passes, with his assent, into his possession, and is not affected by the carriage in which it is transported, nor by the fact that the carriage is loaded by the owner. The common carrier is an insurer of the property carried, and the duty rests upon him to see that the packing and conveyance are such as to secure its safety." Citing with approval, in the opinion, *Mallory* v. *Railroad Co.,* 39 Barb. 488, where it was said that the company will not be exonerated because the owner of the goods furnishes his own cars and does his own loading and unloading, and furnishes brakemen to accompany the cars.

At section 720, Hutchinson on Carriers (2d Ed.), with respect to the right of action for loss or damage to goods, it is said: "When the carrier has subjected himself to liability for the loss of the goods, or for injury done to them while in his custody, and it becomes necessary to compel him to make compensation to the injured party by an action at law, the first question to be determined is in whose name the action must be brought. This is, however, a question about which there can be but little difficulty. The presumption of the law is that the party to whom the goods are consigned is their owner and the person who is entitled to sue for the damage, and the action should in most cases be commenced in his name." Then follow certain exceptions to the general rule, which have no force here, for the goods were shipped by contract to be delivered

f. o. b. cars at Peabody, Mass., and there can be no question that the right of action was in the consignee.

In view of the evidence and of the law applicable to it we are of opinion that the court erred in confining the consideration of the jury to the manner in which the machine was loaded on the train at Peabody.

This court has often held that where an instruction, especially one which directs the jury to find for the plaintiff or defendant, is based upon a partial view of the evidence it is erroneous.

As was said by Judge Riely in *New York, &c., R. Co.* v. *Thomas,* 92 Va. 608, 24 S. E. 265, "Calling the special attention of the jury to a part only of the evidence and the particular fact or facts it may tend to prove, and ignoring the residue of the evidence and the facts it may tend to prove, gives undue prominence to such recited evidence, and disposes the jury to regard it and the fact it tends to prove as the particular evidence, and the fact to be relied on in determining the issue before them, and thus misleads them." See *Seaboard, &c., R. Co.* v. *Joyner,* 92 Va. 354, 23 S. E. 773; *Hansbrough* v. *Neal,* 94 Va. 722, 27 S. E. 593; *Kimball* v. *Borden,* 95 Va. 203, 28 S. E. 207; *Montgomery's Case,* 98 Va. 852, 37 S. E. 1; *Norfolk, &c., R. Co.* v. *Mann,* 99 Va. 180, 37 S. E. 849; *N. & W. Ry. Co.* v. *Cromer,* 99 Va. 763, 40 S. E. 54.

We are of opinion that for error in instructing the jury the judgment must be reversed and a new trial awarded.

*Reversed.*