# Richmond

## VIRGINIA STAGE LINES, INCORPORATED v. GEORGIANA S. NEWCOMB.

April 26, 1948.

Record No. 3312.

Present, All the Justices.

The opinion states the case.

*Caskie, Frost & Watts* and *Royston Jester, Jr.*, for the plaintiff in error.

*Perrow & Rosenberger* and *Irby Turnbull*, for the defendant in error.

STAPLES, J., delivered the opinion of the court.

This writ of error brings before us for review a judgment against the plaintiff in error (defendant below) in favor of Georgiana S. Newcomb, plaintiff, for damages for injuries sustained by her due to a fall from the platform into the driveway of defendant's bus terminal in Lynchburg. The plaintiff's charge of negligence is thus stated in her notice of motion for judgment.

"Your negligence consisted in your failure to adopt reasonable precautions to provide a safe mode of access to the buses, and to prevent the crowding of passengers on the platform in such manner as was likely to cause injury to others lawfully attempting to board the buses, and in not providing an adequate guard rail around the platforms to protect passengers from being pushed off the platforms by crowds or from inadvertently stepping from such platform in crowded conditions."

The parties are in accord that the degree of care required of the defendant was reasonable or ordinary care. There were two trials, each of which resulted in a verdict for the plaintiff. The first verdict was set aside by the trial court for what it considered improper exclusion of evidence offered by the defendant with respect to the usual and conventional design of bus terminal platforms.

The platform of defendant's terminal will be considered as composed of two separate parts. The first was a narrow four and one-half foot walkway leading from the waiting room. This ran flush against the wall of the station building on the near side. Covering this walkway was an overhead canopy. On the far side from the building there were four loading platforms which were extended or projected from the walkway into the area of the driveway where the buses arrived and departed. Passengers would pass from the walkway to the loading platforms or vice versa. The projections were in the form of right angle triangles, with the walkway forming their bases, and were on the same

level as the walkway. Upon entering the station the front of a bus would head in to one side of the triangle while its door would be flush with the other side where the passengers would leave and enter the bus. The space between the sides of the triangle within which the bus would come to rest is referred to in the evidence as a "stall." There were four of these, one adjacent to each loading platform. When coming to a stop in its stall the bus would be at a forty-five degree angle to the walkway. This type of platform was generally known as the "saw-tooth" design. The base of the triangle was twelve feet five inches. This represented the distance along the walkway from the beginning point of one triangular projection to its ending point which was also the beginning point of the next projection. The distance from the farthest point of the projection to the opposite side of the walkway, which was flush with the wall of the building, was twelve feet. The elevation of the walkway and loading platforms above the stalls was five and one-half inches, and this was the height of the curb which separated them. Defendant proved by a contractor, who qualified as an expert witness, experienced in the construction of bus terminals, that this saw-tooth type of platform was the usual or conventional design in common use at bus terminals in Virginia and in several other States. This evidence was not contradicted or its correctness challenged by the plaintiff, nor was there any evidence that any other type of platform would provide a greater measure of safety.

The accident occurred on February 15, 1945, shortly after 2:15 p. m. About two weeks before that time the plaintiff had arrived at the same bus station from her home in Chase City, Virginia. On that occasion, after leaving the bus with a good many other passengers, she had moved along the walkway to Eighth Street, had not gone into the waiting room, and had not noticed the form of construction of the loading platforms. This had been the occasion of her first visit to the terminal.

On the day of the accident she had purchased her return ticket to Chase City, and was seated in the waiting room waiting for the bus which was scheduled to leave at 2:15 p. m. About that time she understood that an announcement made over the loud speaker was for her bus and she followed the crowd through the door on to the walkway, where she stood near a window "a right good while." At this time there were no buses in any of the stalls or berths. Presently a bus came into stall No. 3 and she went over and stepped up on the bus and talked with the bus driver. He told her he was not ready for passengers and she turned and stepped down. She decided to go to another place, she said, because the colored people had crowded in with the white people in the walkway between the bus and the wall where she had been standing. While she was walking from the bus across the loading platform to get with the rest of the white people, she stepped off of its five and one-half inch curb and fell into the driveway of stall No. 4, thus sustaining the injuries complained of. She had not seen the curb and did not know there was one until after the accident because the crowd of people around her at the time she fell kept her from seeing the edge; anyway, she said she was not looking for curbs or stalls as she had not observed that there were any such in the terminal.

The testimony of the plaintiff is to the effect that she did not know she was on a platform at all, but thought that the driveway of the bus was on the same level as the surface on which she was walking. At the time of her fall people were standing in the area designated as stall No. 4, into which she fell.

The first question presented is whether the use by the defendant of the saw-tooth design of platform, in and of itself, constituted negligence. It is argued that the irregularity of the contours rendered it dangerous to persons entering or leaving the buses, and that they might in a crowd be pushed off into the driveway five and one-half inches below, or they might stumble and fall in ignorance of the existence

of the curb. It appears, however, that the plaintiff was not aware of the fact that she was on a platform at all, and hence she was not on the lookout for any edge or end of the surface on which she was walking. It is, therefore, argued by the defendant that she would have stepped off of the curb regardless of whether the loading platform had a straight edge or irregular contours.

The defendant also insists that, because the uncontradicted evidence shows that the saw-tooth type of platform is the usual and conventional design ordinarily used in bus terminals, and furthermore because there is no evidence that any injury had theretofore resulted to any passenger on account of same, or that any other type is more safe, it cannot be held to be negligent in using that type. We think this position of the defendant is well taken. While compliance or noncompliance with the usual and conventional use and custom of a business is generally referred to as an "unbending test" of negligence, it is not necessarily conclusive. That there are exceptions to the rule is pointed out in the opinion of Mr. Justice Gregory in *Bly* v. *Southern R. Co.*, 183 Va. 162, 31 S. E. (2d) 564. A number of the decisions of this court on the subject are therein referred to. We do not think, however, that the evidence here justifies a departure from the general rule. It rather brings this case within the pattern which, in *Jeffress* v. *Virginia Ry., etc., Co.*, 127 Va. 694, 104 S. E. 393, was said to amount to conclusive evidence that ordinary care had been exercised. At page 726 of 127 Va. the rule and modifications thereof are thus stated:

"The general usage of the business in a given situation is admissible as evidence of what is reasonable and proper to be done in that situation, from which, along with the other (if there be other) pertinent facts and circumstances of the case, the jury are to determine the question of negligence. If there be no conflict of evidence as to the existence of the general usage, and nothing in the evidence tending to show, as to employes, that the usage was not

reasonably safe or adequate for its purpose and occasion, and nothing, as to strangers, tending to show that the usage did not afford as high protection as would result from any other known and practical methods of the business, then the usage itself is conclusive evidence of the exercise of ordinary care, and no verdict to the contrary should be upheld."

From the evidence before us we conclude that the mere use of the so-called "saw-tooth" type of platform in defendant's terminal cannot of itself be held to constitute negligence on its part.

█ Plaintiff also claims that the defendant was negligent in not providing guard chains or rails along the sides of the loading platforms to protect passengers from inadvertently falling over the curb into the driveway. Upon this point the uncontradicted testimony with reference to the custom and usage of the operators of bus terminals was that, except in the Greyhound station in the city of Washington, no such chains or rails had ever been employed. Their use in the station in Washington, a large city of over a half million inhabitants, was resorted to, it was said, not for the purpose of averting injury to the passengers, but to force the passengers into a single file in approaching the bus so as to avoid crowding the driver and to preserve the bus equipment. On occasions there had been such violent congestion at the bus doors that several of the doors had been pulled off when a large number of passengers tried to go aboard at the same time. Furthermore, there was no evidence that, prior to the plaintiff's accident, the failure to provide such guard rails or chains had resulted in injury to any passengers or other persons. The plaintiff did not introduce any witness familiar with the business of operating a bus terminal who expressed the view that it would be expedient or safer to use such guard rails or chains. Upon the principle enunciated in the quotation from *Jeffress* v. *Virginia Ry., etc., Co., supra,* we are of opinion that no finding of negligence can be predicated upon this alleged negligence of the defendant.

The plaintiff also contends that the defendant was guilty

of negligence in failing to anticipate, and protect her against, the danger of having her view obscured or obstructed by the crowd so that she could not observe that she was on a platform, or that there was a curb which might cause her to fall. The testimony of the plaintiff is to the effect that, when she heard what she thought was the announcement of her bus, she walked on out to the walkway of the platform and found 'a good many people there." The drawing and photographs which were filed as exhibits with the evidence show that, when she came out of the door on to the walkway of the platform, she was facing bus stall No. 4. The angle point of this stall was directly in front of the door, and the curb which separated it from the loading platform and from the walkway was only four and one-half feet from the door through which she passed. If she advanced on the walkway only two feet from the door, this would have placed her two and one-half feet from the curb of stall No. 4. Thus she could have looked almost directly down on the curb, the stall, and the loading platform. She did not claim there was any crowd standing in front of the door as she entered, and due to the narrowness of the walkway no crowd could have been there without obstructing the entrance. Therefore, the entire stall, the loading platform adjacent thereto, and the curbing between them, were so clearly within her vision when she entered that they could not have escaped her observation if she had been attentive to her surroundings. Moreover, she testified that after entering she moved along the walkway and stood by the wall beside a window which was about ten feet from the door. While standing in that position the photograph shows that she was facing directly into stall No. 3 with conditions like those in stall No. 4 which faced the door. While standing there, she was not more than four feet from the angle point of the curbing which separated said stall from the driveway and the loading platforms on each side of it. The position in which she was standing was adjacent to and provided a close view

of the curb of the loading platform from which she later fell.

With reference to how long she stood by the window, this was her testimony: "Well, I had been standing there a right good while after announcing time for the bus. I thought I would find out *what the trouble was* and that is why I asked him" (a bus driver standing nearby) "which bus went to South Boston." At no point in her testimony did she complain that the crowd obstructed her vision when she came out of the door or while she was standing by the window. In fact, the circumstances of her freedom of movement show the contrary. In view of the length of time she stood by the window it must be concluded that she had ample opportunity to inform herself as to the layout of the loading platforms, the bus stalls, and the curbing between them, if she had made any effort to do so.

One of the plaintiff's witnesses, Kathryn Laughlin, testified that she was standing between the door and the window near the plaintiff and heard her inquire whether the bus standing there was bound for South Boston. In reply to the question as to how many people there were at that time, she said there was a "right good crowd." She did not estimate the number or indicate that there was any congestion.

One of defendant's witnesses stated that there were ten or twelve people standing in the walkway, and most of them were leaning with their backs against the. wall. Another of defendant's witnesses estimated that there were fifteen.

■ In the view we take of the evidence, it is not sufficient to justify the jury in finding that, when the plaintiff entered the walkway upon coming out of the waiting room, or while she was standing near the window waiting for her bus, her vision could have been obstructed in such manner as to prevent her from observing that there were platforms extending from the walkway out to the places where the buses were loaded and unloaded; or from noting the general shape and contours of these loading platforms as delineated by their curbs, or from seeing the bus stalls adjacent thereto. The evidence is convincing that the

plaintiff did not exercise reasonable care to observe the loading platform and the bus stall with the curbs between them so that she might be in a position to protect herself in moving about the terminal. When the accident happened, she stated she did not even know she was walking on a platform, hence made no effort to look down and see the floor. Had she done so, she would undoubtedly have seen the curbing and have avoided her fall. The defendant could not reasonably have foreseen that she would, under the circumstances, have remained oblivious to her surroundings, and, therefore, was not negligent in failing to take precautions to avoid her fall.

We conclude that the plaintiff is not entitled to recover under any view of the case. This renders it unnecessary to consider the other questions so ably discussed by the respective counsel.

*Reversed and final judgment.*