## Richmond

## SOUTHERN RAILWAY COMPANY V. BAPTIST.

March 13, 1913.

1. RAILROADS—*Injury to Traveler—Contributory Negligence.*—When those in charge of a railroad train see a traveler in dangerous proximity to the track, and in a situation where he is unable to save himself from being carried upon the track in front of the approaching train, and that unless the train is stopped he will most probably be carried upon the track, or so near thereto as to be injured or killed, it is their duty to stop the train when it may be safely done, and for an injury to the traveler resulting from their failure so to do the company is liable.

2. NEGLIGENCE—*Rescuer—Contributory Negligence—Question for Jury.* Whether or not a rescuer was guilty of contributory negligence in attempting to save another from injury, or death, is a question for the determination of the jury. Sentiments of humanity applaud the act, the law commends it, and, if not extremely rash and reckless, awards the rescuer redress for injuries received, without weighing with technical precision the rules of contributory negligence or assumption of risk. When confronted with a sudden emergency of this kind, the person in position to render aid is not afforded either time or opportunity to measure the chances of success.

3. EVIDENCE—*Experts—Locomotive Engineer—Qualifications.*—A locomotive engineer with nine years' experience, familiar with the use of air brakes, the scene of the accident under investigation, the curvature of the grade and other details of the situation, and informed by the testimony of the engineer of the train inflicting the injury of the details of the make-up of the train and its condition, and of the rate of speed at which the train was moving, is sufficiently informed and qualified to speak as an expert as to the space within which the train could have been stopped.

4. RAILROADS—*Injury to Rescuer—Contributory Negligence—Last Clear Chance.*—Although a rescuer may not have exercised reasonable prudence in going to the aid of a human being in imminent danger of being struck by an approaching railroad train, yet

after he has once placed himself in a position of danger from which he cannot extricate himself, it is then the duty of those operating the train to avoid injuring him if it can be done by the exercise of ordinary care.

5. INSTRUCTIONS—*Ignoring Essential Facts—Directing Verdict.*—An instruction which undertakes to state all the circumstances necessary to be considered by the jury in arriving at a verdict, and which omits an essential fact of the case, or even an instruction which gives prominence to some fact, especially an instruction which directs the jury to find for the plaintiff or the defendant, should not be given.

Error to a judgment of the Circuit Court of Halifax county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*William Leigh,* for the plaintiff in error.

*Booker & McKinney, James E. Easley, M. B. Booker,* and *Lee & Kemp,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This action was brought by S. G. Baptist to recover of the Southern Railway Company damages for personal injuries suffered by him in consequence of the alleged negligence of the defendant company. To a judgment in favor of the plaintiff for $10,000 this writ of error was awarded upon the petition of the defendant.

The case is before us as upon a demurrer to the evidence, and considered with due regard to the rules applicable under such circumstances, the established facts are that on a clear day one W. B. Chandler, father-in-law of the plaintiff, was driving a gentle horse, about four years of age, toward a grade crossing at the defendant's Scottsburg station; that when within about forty feet of the crossing,

upon warning from bystanders that a train was approaching, he stopped, at which time the train was one hundred yards or more distant, and just coming in sight around certain obstructions. As soon as the engine came in sight the horse became unmanageable, and when the driver found that he could not control him and prevent his moving in the direction of the track, he called for help, whereupon the plaintiff, a large man weighing over two hundred pounds, went forward and seized the bridle. A considerable struggle ensued, the horse rearing and endeavoring to go forward, whilst the driver tried to restrain him, and the plaintiff, swinging to the horse's head, was doing his utmost to prevent the horse from going forward and coming in collision with the engine. The horse finally reached the track and crossed by leaping over the pilot of the engine without injury. In the struggle the plaintiff was thrown against the side of the engine, sustaining thereby dreadful and permanent injuries. The train was running at the rate of eight to ten miles an hour, and could have been stopped within fifty feet, according to the plaintiff's proof. The engineer in charge of the train says that, after he was notified by the fireman of the plaintiff's danger, he could have stopped in fifty, or seventy-five, or maybe one hundred feet. When the struggle with the horse began the train was one hundred and twenty-five to one hundred and thirty steps from the crossing. The fireman says that he was then looking out, and the plaintiff's testimony shows that he was then looking upon the struggle. When the plaintiff caught hold of the frightened and rearing horse it was, notwithstanding the driver's efforts to hold it, working its way toward the crossing, and the violence of the struggle between the horse and the plaintiff was such that the latter could not have released his hold without danger of being trampled upon by the rearing horse. So that the plaintiff was in a perilous situation, from

which he could not extricate himself. The least estimate put upon the distance of the train from the crossing at the time the plaintiff seized the bridle was one hundred and forty-four feet. The fireman says that he saw the horse just as the engine rounded the obstructions (125 steps from the crossing), and that before the plaintiff seized the bridle he saw the horse rearing towards the crossing. It is established beyond controversy that the fireman was looking upon the scene when the plaintiff took hold of the bridle, at which time the engine was at least one hundred and forty-four feet from the crossing. At that time the peril of the plaintiff was apparent to all of the bystanders, and must have been equally manifest to the fireman who was also a spectator. As already stated, the train could have been stopped within fifty feet, at the rate it was moving, so that if the fireman had promptly notified the engineer of the danger when he saw the plaintiff's peril, not less than one hundred and forty-four feet from the crossing, the accident could have been easily averted by stopping the train before it reached the crossing.

It is well settled that where railroad employees discover persons near a railroad or approaching a crossing, such employees have the right to presume that the traveler will stop and not go upon the track immediately ahead of an approaching train, unless there is something to suggest that the traveler does not intend to remain in a place of safety until the train has passed.

The situation in the case at bar, which was manifest to the fireman in ample time for the train to be stopped if he had acted, was one that not only suggested but disclosed to him that a human being was in a situation where he was unable to save himself from being carried on the track in front of the approaching train, and that unless the train was stopped he would most probably be carried upon the track or so near thereto as to be injured or killed by the train.

In *Joyner's Case,* 92 Va. 354, 366, 23 S. E. 773, 777, this court said of an employee who failed to act promptly: "His fault lay in not acting promptly upon evidences of danger forced upon his attention, which a reasonably prudent man would have acted upon, and in this case not to do so was, in our judgment, not only the want of reasonable care, but was reckless negligence."

In *Southern Ry. Co.* v. *Bailey,* 110 Va. 833, 846, 27 L. R. A. (N. S.) 397, 67 S. E. 365, 370, it is said: "If, however, it appears that those in control of a train, in the discharge of their admitted duty to keep a reasonable lookout, discover, or should have discovered, a person upon the track, and there be superadded any fact or circumstance brought home to their knowledge sufficient to put a reasonable man upon his guard that the person upon the track pays no heed to his danger, and will take no steps to secure his own safety, then the situation changes and the negligence of the person injured becomes the remote cause or mere condition of the accident, and the negligence of the railroad company the proximate cause, and there may be a recovery."

These principles are equally applicable when a traveler has reached a point of dangerous proximity to a railroad track and cannot extricate himself, or by any vigilance on his part avert the injury. If the attempt of the plaintiff to save another from injury or death could be held to be an antecedent contributory negligence on his part, such contributory negligence was for the determination of the jury.

In a recent case decided by the Supreme Court of Minnesota, where one was injured while attempting to rescue a fellow employee from impending danger, it is said: "Persons are held justified in assuming greater risks in the protection of human life than would be sustained under other circumstances. Sentiments of humanity applaud

the act, the law commends it, and, if not extremely rash and reckless, awards the rescuer redress for injuries received, without weighing with technical precision the rules of contributory negligence or assumption of risk.   When confronted with a sudden emergency of this kind, the person in position to render aid is not afforded either time or opportunity to measure the chances of success.   He must act quickly, if at all, and much must be left, in determining the character of the act, to the particular situation with which he is at the moment confronted, viewing the act in the light of common prudence and the probability or improbability of success." *Perpich* v. *Letonia Mining Co.,* 118 Minn. 508, 137 N. W. 12.

It is clear upon the facts of the case at bar and the just inferences to be drawn therefrom, and the law applicable thereto, that the verdict of the jury cannot be set aside as contrary to the law and the evidence.

The defendant company contends that the witness, J. I. Harvey, introduced by the plaintiff, should not have been permitted to testify as to within what distance the engine and train could have been stopped as it approached the station on the occasion of the accident.   The bill of exceptions states the ground of this objection to be that "the witness was not competent to testify as to the distance in which said train could be stopped, unless he was familiar with the operation of that train and its condition that morning."   It further states that this witness was a locomotive engineer with nine years' experience on the road of the defendant company, and that of the Norfolk and Western Railway Company.   It further appears that he was familiar with the use of air-brakes, the scene of the accident, the curvature of the grade, and other details of the situation.   It further appears that before the question was answered the engineer who was in charge of the train was called and testified in detail as to the make-up of the

train and its condition, showing that it was equipped with air, that the air was in proper condition, and further showing the rate of speed at which the train was moving. It would seem that this witness was sufficiently informed and qualified to speak as an expert as to the distance within which this train could have been stopped. If, however, he was not, the defendant company was not prejudiced by his opinion that the train could have been stopped within fifty feet, for the reason that its own engineer, who was in charge of the train, testified that he could have stopped the train within fifty, or seventy-five, or maybe one hundred, feet. The peril of the plaintiff was known to the fireman, at the least, when the train was one hundred and forty-four feet distant from the plaintiff, so that if he had promptly warned the engineer of the danger and the engineer had taken one hundred feet within which to stop the train, the longest space mentioned by him as necessary, there would have remained, when the train stopped, forty-four feet between the engine and the plaintiff, which would have averted the accident.

Bill of exceptions No. 2 is to the action of the circuit court in giving instruction "A" asked for by the plaintiff. This instruction told the jury that "if they believed from the evidence that the plaintiff went to the assistance of Chandler, under the circumstances which they may believe from the evidence existed at the time, and that in doing so he acted with reasonable prudence and as a man of ordinary care and caution, similarly situated and under the conditions then existing, would have acted, and was thereby placed in a dangerous position, and that his situation was seen by, and his proximity to the track was known to, the defendant's servants then in charge of said engine, or either of them, in time, by the exercise of ordinary care, to avoid injuring him, and that his situation and proximity to said track were such as to put a man of

ordinary prudence upon notice that he was in imminent danger of being dragged or thrown thereon and injured by the approaching train, and that he was powerless to avert such danger and save himself, and that the said agents and servants of the defendant, or either of them, with such notice and knowledge, failed to exercise reasonable care to use the means at their command consistent with the safety of those upon the engine and train, and the defendant's property, to avoid injuring him, such failure was the negligence of the defendant. And if the jury further believe from the evidence that such failure caused the plaintiff's injury complained of in the declaration, they should find for the plaintiff."

The objection to this instruction is not well taken. It states fully all the facts of the case necessary to its fair and proper submission to the jury, and without the slightest prejudice to the rights of the defendant. One aspect of the instruction, possibly, places a heavier burden upon the plaintiff than he was called upon to bear, for although he may not have exercised reasonable prudence in going to the assistance of Chandler, yet, after he was once placed in a position of danger from which he could not extricate himself, it was then the duty of the defendant to avoid injuring him if it could do so by the exercise of reasonable care. The defendant cannot, however, complain of this phase of the instruction because it was to its advantage.

Bill of exception No. 3 is to the action of the court in refusing to give instructions five and six asked for by the defendant.

Instructions Nos. 2, 3 and 4, given for the defendant, each conclude with the statement that if the plaintiff, when he caught hold of the horse, was so near the crossing and the approaching engine that the engineer could not, in the exercise of ordinary care, have stopped in time to avoid the collision, the jury should find for the defendant.

Instructions Nos. 5 and 6, however, told the jury that if they believed the plaintiff caught hold of the horse when the engine was so near the crossing as to make it probable he might be struck by the engine, and that he failed to turn the horse loose, and was so carried or dragged in front of the engine and was injured, they must find for the defendant. These instructions entirely ignore all the testimony showing that after the plaintiff's peril was discovered, or should have been discovered, the defendant could have stopped the train and avoided the accident. They ignore the evidence that the plaintiff was in a position of peril from which he could not extricate himself by loosening his hold because of the danger of being trampled upon by the rearing horse; and yet, after thus eliminating the most material evidence in the case, they each concluded with a direction to find for the plaintiff. These instructions were well calculated to mislead the jury and were properly refused. This court has repeatedly held that an instruction which undertakes to state all the circumstances necessary to be considered by the jury in arriving at a verdict, and which omits an essential fact of the case, or even an instruction which gives prominence to some fact, especially an instruction which directs the jury to find for the plaintiff or defendant, should not be given. *N. Y., &c., R. Co.* v. *Thomas,* 92 Va. 606, 24 S. E. 264; *Kimball* v. *Borden,* 95 Va. 203, 28 S. E. 207; *N. & W. Ry. Co.* v. *Cromer,* 99 Va. 763, 40 S. E. 54; *Vaughan M. Co.* v. *Stanton T. Co.,* 106 Va. 445, 56 S. E. 140.

Upon the whole case we are of opinion that the judgment complained of is without error to the prejudice of the defendant company, and it must be affirmed.

*Affirmed.*