# Richmond

## Mary S. Shamblee v. Virginia Transit Company.

October 14, 1963.

Record No. 5639.

Present, Spratley, Buchanan, Whittle, Snead, I'Anson and Carrico, JJ.

The opinion states the case.

*Herman T. Benn* (*Richard M. Ballard, Jr.,* on brief), for the plaintiff in error.

*Ralph H. Ferrell, Jr.* and *Hugh V. White, Jr.* (*Hunton, Williams, Gay, Powell & Gibson,* on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

Mary S. Shamblee, appellant, instituted this action against Virginia Transit Company, appellee, to recover damages for personal injuries she received while riding as a paying passenger on one of the company's buses. The jury returned a verdict for plaintiff in the sum of $4,000, and defendant's motion to set it aside as being contrary to the law and the evidence was sustained. From this action of the court, plaintiff was awarded a writ of error.

The litigants will be referred to at times in accordance with the respective positions they occupied in the trial court.

On November 11, 1961, at approximately 6:15 p.m., Mary S. Shamblee boarded defendant's bus in downtown Richmond to return home in the west end of the city from her place of employment. She had used this bus route for over ten years. It was her intention to alight from the bus at the Blair street stop on Meadow street. As the bus proceeded south on Meadow street she pulled the bell cord at Claiborne street, which is the street just before Blair street, but she did not hear the bell ring. At that time she was seated in the right rear of the bus, which side she stated had no lights burning. She had in her hand a paper bag containing a sweater. She was asked on direct examination:

"Q. When you pulled the cord, what did you do then?

"A. I got up and went to the [center] door as I always do. There is two bars there and I always hold to those bars, and in the meantime, I pulled the cord the second time before we got to Blair. When we got almost to Blair, he slowed down. I thought he was going to stop. I made no attempt to step down before he stopped, then he jerked, he just—in other words, you would say he just jerked right on off and when he jerked, why, the sudden jerk just took me right back of the bus. In other words, he just swiftly taken off."

John H. Goode, Jr., plaintiff's witness and the only other remaining passenger on the bus, was seated in the center facing forward and was a frequent patron of the bus. Goode testified that the bus was dimly lighted; that when the bell cord was pulled it did not

ring but made a "flapping" sound; that he heard such a sound as the bus approached the Blair street stop, and that passengers had alighted from the bus at Lakeview, the prior stop, without difficulty. He further stated that the bus approached the Blair street stop as if it was going to stop, but instead it "took off, accelerated again", and that such speed was "more rapid" than it was when it slowed down at the stop. He then heard a "commotion as if someone were falling", looked back and saw plaintiff on her hands and knees. Whereupon he informed the bus operator that plaintiff had fallen. Goode was asked on direct examination:

"Q. Did you notice anything different from the way he took off this time than he usually took off? Was it faster or slower?

"A. I can't say—Restate the question, please.

"Q. In other words, you say it took off?

"A. Yes.

"Q. Now, what we want to know is did you notice—I want you to explain about 'took off.' Is that the way you usually describe the bus pulling off?

"A. Well, like I say, I was under the impression that he was going to stop because from the decrease in the acceleration you would think he was going to stop, but instead of coming to a stop, he started off again. That is what I mean."

R. P. Doyle, the bus operator, stated that he did not realize that plaintiff had made an effort to warn him of her desire to be discharged at Blair street until he was informed by Goode after she had fallen. He did not recall the manner in which he was operating the bus at Blair street, but was certain he did not stop there on this particular trip. He said that the interior light switch was on, but did not know whether the passenger bell was working, and that it was "general procedure" with him to slow down at the intersections and then resume a normal speed.

In her assignments of error plaintiff contends that the court erred in setting aside the jury verdict, because the evidence was sufficient to constitute a jury question as to defendant's negligence.

It is well established that a common carrier is not an insurer of the safety of its passengers, but it does owe to them the highest degree of care for their safety. It is liable for the slightest negligence that such care could have foreseen and guarded against. *Tri-State Coach Corp.* v. *Stidham*, 191 Va. 790, 795, 62 S. E. 2d 894; *Crist* v. *Coach Company*, 196 Va. 642, 645, 85 S. E. 2d 213. Passengers assume all risks which are necessarily incidental to their trip. Utmost

degree of care means no more than every care which is practicable by common carriers engaged in the business of transporting passengers. *Richmond-Ashland Ry. Co. v. Jackson,* 157 Va. 628, 641, 162 S. E. 18.

In *Richmond Greyhound Lines v. Ramos,* 177 Va. 20, 22, 12 S. E. 2d 789, we said:

"The general rule is that a carrier is not liable for jerks and jolts which are necessarily incident to the use of the conveyance. The rule is otherwise where the jerks or jolts are unnecessary or unusually sudden or violent." (Citing authorities).

The burden is upon the plaintiff to prove that the jerk or jolt was unusual before there can be an inference of negligence, since some jerking or jolting is to be expected. *Richmond-Ashland Ry. Co. v. Jackson, supra,* 157 Va. at p. 634.

In the *Ramos* case, *supra,* we quoted with approval from *Phinney v. Eastern Massachusetts St. Ry. Co.,* 285 Mass. 207, 208-9, 189 N. E. 52, 53, wherein it was said that the cause of a fall "* * * may depend upon the passenger's firmness of hold and condition as to balance as well as upon the degree of violence of the movements of the car. The fact that the plaintiff was thrown off balance, in the absence of evidence as to her state of balance at the time the car started, does not warrant the conclusion that the starting was unusual in violence * * *."

A passenger does not make out a valid case of negligence against a carrier, based on an alleged sudden stop, start or jerk merely by adjectival descriptions of the nature of such acts in the absence of some definite factual incident which makes it abnormal and extraordinary. *Foley v. Boston & Maine Railroad,* 193 Mass. 332, 335, 79 N. E. 765; *Retkowsky v. Balto. Transit Co.,* 222 Md. 433, 438, 160 A. 2d 791. See also *Richmond Greyhound Lines v. Ramos, supra,* 177 Va. p. 23.

"Statements such as the street car 'started up all of a sudden, with an awful jerk * * *' are not of themselves sufficient to show negligent operation. * * *." *Herholtz v. West Penn Railways Co.,* 362 Pa. 501, 505, 66 A. 2d 839. See also *Gollis v. Eastern Mass. Street Ry.,* 254 Mass. 157, 158, 149 N. E. 607.

Plaintiff cannot here argue that the failure to have sufficient lights or a working passenger signal device on the bus establishes negligence on defendant. Instruction No. 1 was given without objection and exception and no error has been assigned to the granting of it. The instruction thereby became the law of this case

and is binding on the litigants and this court. *Judge* v. *Burton*, 198 Va. 664, 668, 96 S. E. 2d 120; *Bostic* v. *Whited*, 198 Va. 237, 239, 93 S. E. 2d 334; 10 M. J., Instructions, § 50 p. 266. A portion of the instruction reads:

"Even though you may believe that the bus was improperly lighted, or that the bell did not function, so that the bus failed to stop where the plaintiff desired to alight, or both, such fact, or facts, must not be regarded by you as establishing negligence. You should consider them only in connection with your determination of the single issue of liability, if any, namely, to repeat, whether at the time of the alleged fall the bus was being operated in a negligent manner."

Here, plaintiff testified: "There is two bars there [center door] and I always hold to those bars, * * *." She did not state that she was holding to them when she fell, nor did she say whether or not her grip was firm. As the trial judge stated in his letter opinion it cannot be reasonably inferred from the evidence adduced that a "firm grip" was broken. "To do so would, in my opinion, add something which simply was not proven." Moreover, there is a complete lack of evidence as to plaintiff's state of balance when she fell or at any other time. The fact that she was thrown off balance and on the floor of the bus, in the absence of evidence as to her state of balance at the time, does not justify the conclusion that the movement of the bus was unusual or extraordinary. See *Bray* v. *Boston Elevated Railway*, 303 Mass. 379, 380, 21 N. E. 2d 957.

In describing the movement of the bus, plaintiff used such expressions as "jerked right on off", "sudden jerk" and "swiftly taken off." Goode said the bus "took off, accelerated again". These statements are descriptive adjectives and may convey a different meaning to various people. The record is devoid of factual evidence as to plaintiff's state of balance, her firmness of grip and that the jerk or jolt was unusual or extraordinary. That being the case, the descriptive adjectives alone are insufficient to sustain a verdict for plaintiff. We, therefore, hold that the trial court was correct in setting it aside.

The judgment appealed from is

*Affirmed.*