COMMONWEALTH OF VIRGINIA

V.

JEFFREY LAMOND MILLSAPS

Record No. 831375

January 16, 1987

Present: All the Justices

*J. Brooke Spotswood, Assistant Attorney General (Gerald L. Baliles, Attorney General*, on briefs), for appellant.

*Bruce D. White (Brault, Geschickter, Palmer & Grove*, on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

This is an appeal in a civil action brought by the Commonwealth to recover for damage to its property caused by the negligence of a speeding motorist attempting to evade police pursuit. It requires consideration of the circumstances in which the "rescue doctrine" or "humanitarian doctrine" will negate the defense of assumption of risk. We must also consider the availability of the defense of assumption of the risk asserted against a claim for damages arising from risks inherent in the performance of a policeman's official duties.

The facts are undisputed. Shortly after midnight on January 28, 1981, Raymond Kogan, a Prince William County police officer, saw a car parked along the shoulder of State Route 234 near the Interstate Route 95 (I-95) interchange. A woman was in the driver's seat and a man who later turned out to be the defendant, Millsaps, was standing outside the car. As the officer's cruiser approached the parked car, the woman moved over to the passenger side, Millsaps entered the car on the driver's side and drove away, turning north on I-95. Kogan followed Millsaps' car, which gradually increased its speed. Kogan turned on his flashing emergency lights. He estimated Millsaps' speed at 90 miles per hour as he passed the Dale City exit, 100 miles per hour as he passed the Lake Ridge exit and well over 105 miles per hour as he entered Fairfax County. Kogan lost sight of Millsaps' car at the Lorton exit, in Fairfax County.

Benjamin Wood, another Prince William County officer, joined the chase at Kogan's request transmitted by radio. He entered the northbound lanes of I-95 at the Dale City exit, ahead of Millsaps. As he saw Millsaps' speeding car and Kogan's pursuing police cruiser coming up behind him, he activated his emergency lights and siren and accelerated in an effort to stay ahead of Millsaps. His purpose was to create a "rolling roadblock," in which he would stay ahead of the speeding motorist, changing lanes as necessary to keep Millsaps from passing him, and gradually reduce his speed to force Millsaps to slow and stop. The effort failed. Millsaps swerved several times and succeeded in passing Wood. Wood pursued him at 115 miles per hour, the highest speed his cruiser could attain, but Millsaps was going "a lot faster than that."

As they approached Fairfax County, Wood and Kogan called their dispatcher and asked for assistance from the Virginia State Police and the Fairfax County police. Two Virginia State Troop-

ers had been listening to the radio traffic concerning the chase and, in their respective cruisers, entered I-95 to assist. Trooper Ralph Kofer entered the northbound lanes at the Lorton interchange just in time to see Millsaps' car pass at a speed in excess of 100 miles per hour. He made a radio call to Trooper Terry Fletcher, who was then entering I-95 at Newington, the next interchange north of Lorton. Fletcher soon reported that he saw Millsaps' headlights approaching from his rear at a high rate of speed. Fletcher positioned his cruiser in the center lane and accelerated to 90 miles per hour. Millsaps, who had been in the center lane, swerved to the right lane. Fletcher moved to the right lane ahead of him. Millsaps moved back to the center lane. Fletcher, still accelerating to try to stay ahead of Millsaps, moved back to the center lane to try to "contain" Millsaps' vehicle. Millsaps struck the rear of Fletcher's cruiser, which spun around and came to a rest against a guardrail, headed south. The Millsaps car turned over and came to rest on its roof.

Fletcher, asked why he had attempted a "rolling roadblock" in this situation, testified: "In my mind a couple of miles up the road there is an interchange, 495, the beltway, which anytime of the day there is a fair amount of traffic, and at speeds like that going into that interchange I would think there would be some type of collision." The other officers had seen some "civilian" traffic on the road which Millsaps had passed during the pursuit, but traffic was very light and Fletcher was unaware of any particular vehicles on the road ahead of him. The evidence contains no suggestion that Fletcher was aware that Millsaps had a passenger. The Commonwealth's reliance on the rescue doctrine is based entirely on Fletcher's concern for any motorists who might be using the highway ahead.

The Commonwealth instituted this civil action pursuant to Code § 8.01-197 to recover for damage to its property, the police cruiser and the guardrail. In a jury trial, the Commonwealth presented the evidence of the police officers involved in the chase as well as the testimony of John T. O'Neill, an instructor at the State Police Training Academy in Richmond. O'Neill testified that Fletcher had been one of his students, that all students at the Academy were instructed in the "rolling roadblock" technique, and, based on his reading of the police reports of the chase in question, Fletcher "was following really closely right down the

line basically what we have taught him . . . in establishing a running or rolling roadblock."

Fletcher testified that the "rolling roadblock" was an extraordinary measure, that he realized that it involved personal danger, but that in the circumstances it was appropriate and, "given that situation, you don't have any other choice . . . ." He said that he was accelerating at all times during the maneuver, and that his speed was still increasing when the impact occurred.

When the Commonwealth rested, Millsaps moved the court to strike the Commonwealth's evidence. In argument on the motion, Millsaps' counsel contended that Fletcher was guilty of contributory negligence as a matter of law and that, in maneuvering to stay ahead of Millsaps' onrushing vehicle, Fletcher had voluntarily assumed the risk as a matter of law. The court denied the motion and Millsaps rested without offering evidence. The parties stipulated the quantum of the Commonwealth's damages and stipulated that Millsaps had been the driver of his car.

The court, without objection, granted instructions submitting the issue of Fletcher's contributory negligence to the jury. Over the Commonwealth's objection, the court also granted instructions submitting to the jury the issue of Fletcher's voluntary assumption of the risk. The court refused the Commonwealth's tendered instruction on the rescue doctrine.[1]

The jury returned a verdict for the defendant. The court refused the Commonwealth's motion to set it aside and entered judgment on the verdict. The Commonwealth assigns two errors:

---

[1]

Instruction No. 10

Plaintiff contends that he was neither contributorily negligent nor did he assume the risk when he exposed himself voluntarily to danger because he was attempting to preserve the safety of other motorists on a public highway. A plaintiff who risks injury while attempting to rescue someone from an imminent and serious danger that the plaintiff did not create is not contributorily negligent nor did he assume a known risk unless the plaintiff's conduct was rash and reckless under the circumstances of this case.

If you believe from all the evidence:

(1) that the safety of other motorists on a public highway was in imminent and serious danger;

(2) that the plaintiff did not create the danger; and

(3) that the plaintiff did not recklessly disregard all considerations for his own safety in attempting to maintain the safety of the public highway,

then the plaintiff was neither contributorily negligent nor did he assume the risk in exposing himself to danger.

the court's refusal to instruct the jury on the rescue doctrine, and the court's granting an instruction on the assumption of risk.

We have restricted the application of the rescue doctrine to situations involving an apparent immediate peril of death or serious bodily harm to another person. In *Southern R. Co.* v. *Baptist*, 114 Va. 723, 727-28, 77 S.E. 477, 479 (1913) (quoting *Perpich* v. *Leetonia Mining Co.*, 118 Minn. 508, 512-513, 137 N.W. 12, 14 (1912)), we said:

> "Persons are held justified in assuming greater risks in the protection of human life than would be sustained under other circumstances. Sentiments of humanity applaud the act, the law commends it, and, if not extremely rash and reckless, awards the rescuer redress for injuries received, without weighing with technical precision the rules of contributory negligence or assumption of risk. When confronted with a sudden emergency of this kind, the person in a position to render aid is not afforded either time or opportunity to measure the chances of success. He must act quickly, if at all, and much must be left, in determining the character of the act, to the particular situation with which he is at the moment confronted, viewing the act in the light of common prudence and the probability or improbability of success."

In *Baptist*, as in the earlier case of *Wright* v. *Atlantic Coast Line*, 110 Va. 670, 66 S.E. 848 (1910), we considered the rescue doctrine in the context of rescuers who attempted to extricate others from railroad tracks in the face of an approaching train. In *Andrews* v. *Appalachian Elec. Power Co.*, 192 Va. 150, 63 S.E.2d 750 (1951), we applied the doctrine in a case in which a rescuer, attempting to save another from electrocution by a fallen power line, was himself electrocuted. In *Andrews*, we stated the rule as follows:

> "[O]ne who sees a person in imminent and serious peril caused by the negligence of another cannot be charged with contributory negligence, as a matter of law, in risking his own life or serious injury in attempting to effect a rescue, provided the attempt is not recklessly or rashly made . . . . However, in order to justify one in risking his life or serious injury in rescuing another person from danger, *the peril threatening the latter must be imminent and real, and not*

*merely imaginary or speculative.* There must be more than a mere suspicion that an accident to some person may follow if a rescue is not performed."

*Id.* at 160-61, 63 S.E.2d at 757 (quoting 38 Am. Jur., *Negligence,* § 228, pp. 912-13) (emphasis added).

■ It is true, as the Commonwealth contends, that the doctrine is broad enough to cover a rescuer who acts on a reasonable appearance of peril to another, although the peril turns out by hindsight to have been more apparent than real, because it is the policy of the law to encourage selfless acts of heroism, and not to penalize them. But "at least, the situation must be such as to induce a reasonable belief that some person is in imminent peril." *Ellmaker v. Goodyear Tire & Rubber Company,* 372 S.W.2d 650, 657 (Mo. Ct. App. 1963) (citations omitted).

*Ellmaker* extended the rescue doctrine to facts analogous to those before us. There, an automobile parked in a sloping driveway began to roll, unattended, down the slope. Plaintiff's decedent ran to intercept it and was killed when it ran into a utility pole. There was no evidence that there were any persons in the path of the car, or in the driveway, or in the alley the driveway entered. Because the alley was often heavily travelled, and "had the attributes of a well travelled street," the *Ellmaker* court concluded that the jury might reasonably find that the "decedent's efforts were directed to the humane purpose of saving other persons from imminent danger of personal injury or death," even though the evidence failed to show the presence of any persons requiring rescue at the time. *Id.*

■ Although the Commonwealth urges us to do so, we are unwilling to extend the rescue doctrine to cover rescue efforts directed toward potential but unperceived victims. In our view, such an extension of the doctrine is rendered inadvisable by the uncertainty which would be created in the law of negligence by the adoption of such a subjective test of a rescuer's intentions. We adhere to the views expressed in our cases cited above, which require, as a prerequisite to the application of the rescue doctrine, at least a reasonable appearance to the rescuer that some person is actually in imminent and serious peril of personal injury or death.

■ In the case before us, Trooper Fletcher entertained, at most, a suspicion based on familiarity with the busy interchange ahead of him, that some motorists might be using it when Millsaps ap-

proached, and that such motorists might be imperiled by Millsaps' reckless driving. He had no way of knowing whether any such persons were in fact present, or whether they would be present when Millsaps arrived at the intersection. As commendable as his concern was, it was based on speculation, not on an appearance of imminent peril to any person. Accordingly, there was no evidence to support the Commonwealth's rescue instruction and the court correctly refused it.

■ As noted above, the Commonwealth agreed to submit to the jury the issue of Fletcher's contributory negligence. *But cf. Griffin* v. *Shively*, 227 Va. 317, 322, 315 S.E.2d 210, 213 (1984) (A defendant who is guilty of wilful and wanton conduct cannot rely on contributory negligence as a defense). Accordingly, the instructions given on that subject have become the law of the case. *See Shamblee* v. *Transit Company*, 204 Va. 591, 594-595, 132 S.E.2d 712, 714 (1963). The Commonwealth, however, objected to instructions submitting the defense of assumption of the risk to the jury, and argues on appeal that police officers in normal pursuit of their duties should not be subject to that doctrine because they are not confronted with a voluntary choice of courses of action, but act under the compulsion of duties imposed by law, citing *McAllister* v. *Cummings*, 191 Cal. App. 2d 1, 12 Cal. Rptr. 418 (1961), and *Clayborne* v. *Mueller*, 13 Md. App. 530, 284 A.2d 24 (1971), *aff'd.*, 291 A.2d 443 (1972).

■ It is true, as the Commonwealth argues, that policemen, firemen, and other public officers are often called upon, in the performance of their ordinary duties, to undertake great personal risks for the protection of the persons and property of others. They frequently respond to these demands with great personal courage. Nevertheless, it has not been the policy of the law of Virginia to facilitate litigation by such public officers as a means of compensating them for injuries received in the line of duty, but rather to impose that burden on the public generally, through workers' compensation and other benefits. *Pearson* v. *Canada Contracting Co.*, 232 Va. 177, 184-5, 349 S.E.2d 106, 111 (1986). In applying that policy, we perceive no logical basis for a distinction between damage to public property and injuries to public officers.

■ In *Pearson*, we equated policemen with firemen as officers in a class of their own because of the public nature of their rights and duties. Under the "fireman's rule," such officers are held, as a matter of law, to assume the risks of injury occasioned

by ordinary negligence inherently involved in the normal pursuit of their duties. *C&O Railway* v. *Crouch*, 208 Va. 602, 608-609, 159 S.E.2d 650, 654-655 (1968), *cert. denied*, 393 U.S. 845 (1968); *see also Berry* v. *Hamman*, 203 Va. 596, 599, 125 S.E.2d 851, 854 (1962). The rationale of the "fireman's rule" does not apply the assumption of risk doctrine to public officers because of any spirit of venturesomeness in the face of a known danger. Rather, it is based upon the officer's relationship with the public, from which arises his obligation to accept the usual risks inherent in his duties, whether caused by negligence or not. *Crouch*, 208 Va. at 608, 159 S.E.2d at 654.

When it is contended that a defendant's negligence subjects the officer to an undue risk, not inherently involved in the normal pursuit of his duties, the issue of the officer's assumption of the risk becomes one of fact for the jury rather than a matter of law. *See Crouch*, 208 Va. at 609, 159 S.E.2d at 655. When the defendant's conduct is found to be wilful and wanton, the defense of assumption of risk may be entirely barred. *See Korzun* v. *Shahan*, 151 W.Va. 243, 252, 151 S.E.2d 287, 293 (1966). And, as noted above, the rescue doctrine, in a proper case, may vitiate the defense of assumption of risk.

Here, the rescue doctrine was unavailable and the jury had no opportunity to find Millsaps guilty of wilful and wanton conduct because no instructions were offered on that subject. The Commonwealth neither alleged nor sought to prove that Millsaps' negligence subjected Fletcher to undue risk beyond that inherently involved in the normal pursuit of his police duties so as to make assumption of risk a jury issue. Therefore, the court, on the record before us, might have found that Fletcher had assumed the risk as a matter of law, pursuant to the "fireman's rule" adopted in *Crouch*. This would have resulted in summary judgment in Millsaps' favor. By submitting the issue of assumption of risk to the jury, the court made a ruling more favorable to the Commonwealth than that to which it was entitled. The Commonwealth cannot complain of such a ruling on appeal.

Accordingly, the judgment will be

*Affirmed.*

POFF, J., dissenting.

Although I agree with the majority that the plaintiff's failure to allege wilful and wanton conduct barred it from invoking the rule in *Griffin* v. *Shively*, 227 Va. 317, 322, 315 S.E.2d 210, 213 (1984),* I cannot join the Court's holding that the rescue doctrine does not apply in a case where the rescue efforts are undertaken to protect "potential but unperceived victims."

I understand these words to mean that, even though the public is exposed to potential danger, the rescue doctrine does not apply unless at least one potential victim is within the rescuer's field of vision.

I would hold that, in the enforcement of laws designed to promote public safety, a police officer has the benefit of the rescue doctrine when he reasonably perceives that a person's violation of such laws, whether wilful or merely negligent, poses a potential danger of death or bodily injury to others. A police officer is uniquely trained and equipped to assess the nature and extent of a threat to public safety. Whether the officer's perception of such danger is reasonable under the circumstances should ordinarily be a question for a jury.

Because I consider the evidence fully sufficient to support a finding that officer Fletcher reasonably perceived that Millsaps' conduct posed such a danger, I would reverse the judgment, and on remand, instruct the trial court to grant an instruction on the rescue doctrine in terms relevant to the undisputed facts of this case.

CARRICO, C.J., and THOMAS, J., join in dissent.

---

* Had the Commonwealth alleged wilful and wanton conduct and registered timely objection, the granting of the contributory-negligence instruction would have been reversible error under the rule in *Griffin*. I favor the view of courts in sister jurisdictions which hold that the same rule applies to an instruction on assumption of risk. *See e.g., Korzun* v. *Shahan*, 151 W.Va. 243, 252, 151 S.E.2d 287, 293 (1966). And in cases involving firemen or policemen, it should apply to bar an instruction on the "fireman's rule", a rule which this Court has applied only in cases involving ordinary negligence. *See e.g., C & O Railway* v. *Crouch*, 208 Va. 602, 159 S.E.2d 650, *cert. denied*, 393 U.S. 845 (1968) (fireman-plaintiff); *Pearson* v. *Canada Contracting Co.*, 232 Va. 177, 349 S.E.2d 106 (1986) (policeman-plaintiff).